Ds094939

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 OCT 24  PM 12: 05

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

----------------------------------------------------------- X

3 - 16 C V - 2968 G

MOBILITY CREDIT UNION,  :  Case No. _____

:
:
:  [formerly 101st Judicial District
Plaintiff,  :  Court, Dallas County, Texas
:  No. DC-16-12531]
:
-against-  :
:
GASTON MUGNIER,  :
:
Defendant,  :

----------------------------------------------------------- X

## NOTICE OF REMOVAL

Defendant respectfully removes Case No. DC-16-12531 from the 101st Judicial District, for the County of Dallas, State of Texas pursuant to 28 U.S.C. § 1332 and as grounds for his removal states as follows:

### STATEMENT OF THE CASE

1. On September 19, 2016, Plaintiff filed a complaint in the 101st Judicial District, for the County of Dallas, State of Texas, styled "Mobility Credit Union vs. Gaston B. Mugnier", Case No. DC-16-12531 (the "State Court action"). A copy of the Complaint, with exhibits, is attached as Exhibit A.

2. Undersigned Defendant, Gaston Mugnier, was served with the Complaint on October 8, 2016 via certified mail received from the Texas Secretary of State.

3. On information and belief, based on a stamp on the face of the Complaint, the Texas Secretary of State was served with a copy of the Complaint on September 30, 2016.

1

4. The Complaint seeks to enforce Plaintiff's alleged rights as mortgagee arising from a mortgage it holds on Defendant's property, i.e. his home, located in St. Tammany Parish, State of Louisiana.

## DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332

5. This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and more than $75,000, exclusive of interest and costs is at stake.

6. Plaintiff alleges it is a state chartered credit union with its principal place of business in Dallas County, Texas. See Complaint at ¶ 2.

7. Defendant affirmatively declares that he is a resident of and domiciled in the State of Louisiana.

8. Plaintiff alleges, and Defendant admits, that Defendant is a nonresident of Texas whose usual place of abode is 505 West 5th Street, Covington, LA 70433. See Complaint at ¶ 3.

9. Plaintiff alleges that it seeks monetary relief over $200,000.00 but not more than $1,000,000.00. See Complaint at ¶ 1.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED

10. Pursuant to 28 U.S.C. § 1446(a) and Local Civil Rule 81.1, the instant Notice of Removal containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon the defendant in the State Court action, together with a completed civil cover sheet; a supplemental civil cover sheet; an index of all documents that clearly identifies each document and indicates the date the document was filed in state court; a copy of the docket sheet in the state court action; each document filed in the state court action, except discovery material, individually tabbed and arranged in chronological order according to

the state court file date; and a separately signed certificate of interested persons that complies with LR 3.1(c) or 3.2(e), are being filed contemporaneously with this Notice of Removal.

11. This Notice of Removal has been filed within 30 days of the date that Defendant was served with the summons or the Complaint in this matter. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1446(a) because the U.S. District Court for the Northern District of Texas is the federal judicial district embracing the Circuit Court for Dallas County, Texas where the State Court action was originally filed.

<u>CONCLUSION</u>

By Notice of Removal, Gaston Mugnier, undersigned Defendant, does not waive any objections he may have as to service, jurisdiction, or venue, or any other defenses available in this action. Gaston Mugnier, undersigned Defendant, intends no admission of fact, other than as to his place of residence, law or liability by this Notice, and expressly reserves all defenses, motions, and pleas.

Dated: October 20, 2016                          Respectfully submitted,

BY:

**Gaston Mugnier**
Appearing in proper person
505 West 5th Avenue
Covington, Louisiana 70433
Telephone: (985) 892-1180
Facsimile: (985) 246-7080
gmugnier@hotmail.com

3



## CERTIFICATE OF SERVICE

       The foregoing Notice of Removal was mailed United States Mail, postage prepaid, this 20th day of October to:

<div align="center">

Kyle B. Mandeville
1201 Elm St. Suite 2500
Dallas TX 75270
Attorney for Plaintiff

</div>

BY: **Gaston Mugnier**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 OCT 24   PM 12: 05

DEPUTY CLERK

------------------------------------------------------ X

MOBILITY CREDIT UNION,                       :
                                             :    Case No. _____
                                             :
               Plaintiff,                    :    [formerly 101st Judicial District
                                             :    Court, Dallas County, Texas
                                             :    No. DC-16-12531]
                                             :
-against-                                    :
                                             :
GASTON MUGNIER,                              :
                                             :
               Defendant,                    :
------------------------------------------------------ X

## INDEX OF STATE COURT DOCUMENTS

Pursuant to Local Civil Rule 81.1, undersigned Defendant, as the removing party, provides an index of all documents that clearly identifies each document and indicates the date the document was filed in state court:

1. Original Petition 09/19/2016

2. Return Of Service on Texas Secretary of State 10/04/2016

3. Dismissal for Want of Prosecution 11/17/2016

Dated: October 20, 2016                    Respectfully submitted,

                              BY:
                                   Gaston Mugnier
                                   Appearing in proper person
                                   505 West 5th Avenue
                                   Covington, Louisiana  70433
                                   Telephone: (985) 892-1180
                                   Facsimile: (985) 246-7080
                                   gmugnier@hotmail.com

# STATE COURT CIVIL DOCKET SHEET

## Case Information

DC-16-12531 | MOBILITY CREDIT UNION vs. GASTON MUGNIER

Case Number
DC-16-12531

Case Type
CNTR CNSMR COM DEBT

Court
101st District Court

Case Status
OPEN

File Date
09/19/2016

## Party

PLAINTIFF
MOBILITY CREDIT UNION

Address
1201 ELM STREET, SUITE 2500
DALLAS TX 75270

Active Attorneys ▾
Lead Attorney
MANDEVILLE, KYLE B.
Retained

Work Phone
214-742-2121

Fax Phone
214-748-7949

DEFENDANT
MUGNIER, GASTON B.

Address
505 W 5TH ST
COVINGTON LA 70433

## Events and Hearings

09/19/2016 NEW CASE FILED (OCA) - CIVIL

09/19/2016 ORIGINAL PETITION ▾

Plaintiff's Original Petition

Civil Case Information Sheet.pdf

09/19/2016 ISSUE CITATION COMM OF INS OR SOS

09/26/2016 CITATION ISSUED ▾

DC16-12531 (SOS).pdf

09/26/2016 CITATION SOS/COI/COH/HAG ▾

Anticipated Server
ESERVE

Anticipated Method
Actual Server
CERTIFIED MAIL

Returned
10/04/2016
Comment
SOS ESERVE-AB

10/04/2016 RETURN OF SERVICE ▾

ROS GASTON B. MUGNIER -

  Comment
  GASTON MUGNIER

11/17/2016 DISMISSAL FOR WANT OF PROSECUTION ▾

Ad Hoc Hearing

Judicial Officer
WILLIAMS, STACI



Hearing Time
9:00 AM

## Financial

MOBILITY CREDIT UNION

|  | | |
|---|---|---|
| Total Financial Assessment | | $299.00 |
| Total Payments and Credits | | $299.00 |

| | | | | |
|---|---|---|---|---|
| 9/23/2016 | Transaction Assessment | | | $299.00 |
| 9/23/2016 | CREDIT CARD - TEXFILE (DC) | Receipt # 60919-2016-DCLK | MOBILITY CREDIT UNION | ($299.00) |

## Documents

Plaintiff's Original Petition

Civil Case Information Sheet.pdf

DC16-12531 (SOS).pdf

ROS GASTON B. MUGNIER -

Ad Hoc Hearing

CIVIL CASE INFORMATION SHEET

DC-16-12531

CAUSE NUMBER *(FOR CLERK USE ONLY)*: _____  COURT *(FOR CLERK USE ONLY)*: _____

STYLED _____
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment motion for modification or enforcement is filed in a family law case. The information should be the best available at the time of filing. This sheet, approved by the Texas Judicial Council, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at trial.

## 1. Contact information for person completing case information sheet:

Name: Kyle S. Mandeville
Email: mandevillek@zasemanjones.com

Address: 1201 Elm Street, Suite 2500
Telephone: 214-742-2121

City/State/Zip: Dallas, Texas 75270
Fax: 214-748-7949

Signature:
State Bar No: 24095969

### Names of parties in case:

Plaintiff(s)/Petitioner(s):

Mobility Credit Union
formerly known as Southwest 18M Employees Federal Credit Union

Defendant(s)/Respondent(s):

Gaston B. Mugnier
___

[Attach additional page as necessary to list all parties]

### Person or entity completing sheet is:

[✓] Attorney for Plaintiff/Petitioner
[ ] *Pro Se* Plaintiff/Petitioner
[ ] Title IV-D Agency
[ ] Other: _____

Additional Parties in Child Support Case:

Custodial Parent:

Non-Custodial Parent:

Presumed Father:

## 2. Indicate case type, or identify the most important issue in the case *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|

### Civil

**Contract**

*Debt/Contract*
[ ] Consumer/DTPA
[✓] Debt/Contract
[ ] Fraud/Misrepresentation
[ ] Other Debt/Contract:

*Foreclosure*
[ ] Home Equity—Expedited
[ ] Other Foreclosure
[ ] Franchise
[ ] Insurance
[ ] Landlord/Tenant
[ ] Non-Competition
[ ] Partnership
[ ] Other Contract:

**Injury or Damage**
[ ] Assault/Battery
[ ] Construction
[ ] Defamation
*Malpractice*
[ ] Accounting
[ ] Legal
[ ] Medical
[ ] Other Professional Liability: _____
[ ] Motor Vehicle Accident
[ ] Premises
*Product Liability*
[ ] Asbestos/Silica
[ ] Other Product Liability List Product:
[ ] Other Injury or Damage:

**Real Property**
[ ] Eminent Domain/ Condemnation
[ ] Partition
[ ] Quiet Title
[ ] Trespass to Try Title
[ ] Other Property:

**Related to Criminal Matters**
[ ] Expunction
[ ] Judgment Nisi
[ ] Non-Disclosure
[ ] Seizure/Forfeiture
[ ] Writ of Habeas Corpus— Pre-indictment
[ ] Other: _____

### Family Law

**Marriage Relationship**
[ ] Annulment
[ ] Declare Marriage Void
*Divorce*
[ ] With Children
[ ] No Children

**Post-judgment Actions (non-Title IV-D)**
[ ] Enforcement
[ ] Modification—Custody
[ ] Modification—Other

**Title IV-D**
[ ] Enforcement/Modification
[ ] Paternity
[ ] Reciprocals (UIFSA)
[ ] Support Order

**Other Family Law**
[ ] Enforce Foreign Judgment
[ ] Habeas Corpus
[ ] Name Change
[ ] Protective Order
[ ] Removal of Disabilities of Minority
[ ] Other: _____

**Parent-Child Relationship**
[ ] Adoption/Adoption with Termination
[ ] Child Protection
[ ] Child Support
[ ] Custody or Visitation
[ ] Gestational Parenting
[ ] Grandparent Access
[ ] Paternity/Parentage
[ ] Termination of Parental Rights
[ ] Other Parent-Child:

**Employment**
[ ] Discrimination
[ ] Retaliation
[ ] Termination
[ ] Workers' Compensation
[ ] Other Employment:

**Other Civil**
[ ] Administrative Appeal
[ ] Antitrust/Unfair Competition
[ ] Code Violations
[ ] Foreign Judgment
[ ] Intellectual Property
[ ] Lawyer Discipline
[ ] Perpetuate Testimony
[ ] Securities/Stock
[ ] Tortious Interference
[ ] Other: _____

**Tax**
[ ] Tax Appraisal
[ ] Tax Delinquency
[ ] Other Tax

**Probate & Mental Health**
*Probate/Wills/Intestate Administration*
[ ] Dependent Administration
[ ] Independent Administration
[ ] Other Estate Proceedings
[ ] Guardianship—Adult
[ ] Guardianship—Minor
[ ] Mental Health
[ ] Other: _____

## 3. Indicate procedure or remedy, if applicable *(may select more than 1)*:

[ ] Appeal from Municipal or Justice Court
[ ] Arbitration-related
[ ] Attachment
[ ] Bill of Review
[ ] Certiorari
[ ] Class Action
[ ] Declaratory Judgment
[ ] Garnishment
[ ] Interpleader
[ ] License
[ ] Mandamus
[ ] Post-judgment
[ ] Prejudgment Remedy
[ ] Protective Order
[ ] Receiver
[ ] Sequestration
[ ] Temporary Restraining Order/Injunction
[ ] Turnover

FORM NO. 353-4—CITATION

~~THE STATE OF TEXAS~~

**To:** **GASTON B. MUGNIER**
**BY SERVING THE OFFICE OF THE SECRETARY OF STATE CITATIONS UNIT**
**P.O. BOX 12079**
**AUSTIN, TX 78711-2079**

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.
Your answer should be addressed to the clerk of the **101st District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **MOBILITY CREDIT UNION**

Filed in said Court 19th day of September, 2016 against
**GASTON B. MUGNIER**

For suit, said suit being numbered **DC-16-12531** the nature of which demand is as follows:
Suit On **CNTR CNSMR COM DEBT** etc.
as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 26th day of September, 2016**
ATTEST: FELICIA PITRE
Clerk of the District Courts of Dallas, County, Texas

By _/s/ Arieana Bahena_____, Deputy
    **ARIEANA BAHENA**

---

CITATION

No.: DC-16-12531

MOBILITY CREDIT UNION
VS.
GASTON B. MUGNIER

ISSUED
ON THIS THE 26TH DAY OF
SEPTEMBER, 2016

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **ARIEANA BAHENA**, Deputy

Attorney for : Plaintiff
**KYLE B. MANDEVILLE**
**1201 ELM ST STE 2500**
**DALLAS TX 75270**
**(214) 742-2121**
mandevillek@passmanjones.com

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

**OFFICER'S RETURN
FOR INDIVIDUALS**

Cause No. DC-16-12531

Court No: 101st District Court

Style: MOBILITY CREDIT UNION
vs.
GASTON MUGNIER

Received this Citation the _____ day of _____, 20____ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

----------000000----------

**OFFICER'S RETURN
FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20____ at _____ o'clock ____M. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock ____M. by summoning the within named Corporation, _____ by delivering to _____ President - Vice President - Registered Agent - in person, of the said _____ a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

----------000000----------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:

| | | | To certify which witness by my hand. |
|---|---|---|---|
| For Serving Citation | $ _____ | Sheriff _____ | |
| For Mileage | $ _____ | County of _____ | |
| For Notary | $ _____ | State of _____ | |
| Total Fees | $ _____ | By _____ | |

(Must be verified if served outside the State of Texas)
State of _____
County of _____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20____, to certify which witness my hand and seal of office.

Seal

State & County of _____


FILED
DALLAS COUNTY
9/19/2016 5:49:31 PM
FELICIA PITRE
DISTRICT CLERK

Christi Underwood

CAUSE NO. DC-16-12531 _____

| | | |
|---|---|---|
| **MOBILITY CREDIT UNION,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **_____ JUDICIAL DISTRICT** |
| | § | |
| **GASTON B. MUGNIER,** | § | |
| | § | |
| **Defendant.** | § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Mobility Credit Union, formerly known as Southwest IBM Employees Federal Credit Union (hereinafter **"Plaintiff"**), and files this its Original Petition against Defendant Gaston B. Mugnier (**"Defendant"**), and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Plaintiff requests Level 2 discovery in this case as set forth by Rule 190.3 of the TEXAS RULES OF CIVIL PROCEDURE.  Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000.

### II.
### PARTIES

2.      Plaintiff is a Texas state chartered credit union with its principal place of business in Dallas County, Texas.

3.      Defendant is an individual who is a nonresident of Texas and whose usual place of abode is 505 West 5th Street, Covington, LA. 70433.  Defendant has engaged in business in the State of Texas, as defined in section 17.042 of the Texas Civil Practice and Remedies Code, but

---

PLAINTIFF'S ORIGINAL PETITION
#395471

PAGE 1



has not designated or maintained a resident agent for service of process. Therefore, Defendant may be served with process by a qualified officer or private process server delivering process to the Texas Secretary of State at 1019 Brazos Street, Austin, TX. 78701, pursuant to sections 17.044(a)(1) and/or (b) and 17.045(a) of the Texas Civil Practice and Remedies Code.

### III.
### VENUE

4.      Venue is proper in Dallas County because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County, Texas. TEX. CIV. PRAC. & REM. CODE §§ 15.002(a)(2).

### IV.
### JURISDICTION

5.      The Court has jurisdiction over the Defendant because the Defendant was doing business in Dallas County in the State of Texas at the time the events giving rise to this action occurred. The Court has jurisdiction over the controversy because the damages are within the jurisdictional requirements of this Court.

### V.
### FACTUAL BACKGROUND

6.      Defendant is the maker of that certain Promissory Note to CU Members Mortgage, a division of Colonial Savings, F.A. dated September 11, 2002 and in the amount of $185,206.00 ("*Note*"). A true and correct copy of the Note is attached hereto as **Exhibit A**.[1]

7.      The Note is secured by that certain Mortgage executed by Defendant dated September 11, 2002 ("*Mortgage*") and creating a security interest in that certain real property

---

[1] The monthly payments provided for by the Note were originally payable in Dallas County, Texas at 14665 Midway Road, Ste 220, Addison, Texas 75001. Plaintiff's current mailing address is also in Dallas County, Texas at P.O. Box 630428, Irving, Texas 75063. Incidentally, Defendant is over five hundred (500) days delinquent in paying his monthly payments under the Note and has routinely evaded efforts to foreclose on the Property in accordance with the Mortgage.

located in St. Tammany Parish, Louisiana at 505 West 5th Street, Covington, LA 70433 (*"Property"*), as more specifically defined in the Mortgage. A true and correct copy of the Mortgage is attached hereto as **Exhibit B**.

      8.      The Note and Mortgage were assigned to Plaintiff on October 4, 2002, as evidenced by a Notarial Endorsement and Assignment of Mortgage Note and Mortgage (*"Assignment"*) and an Allonge to the Note. (*"Allonge"*). True and correct copies of the Assignment and Allonge are attached hereto as **Exhibit C**. Colonial Savings continues to service the Note on behalf of Plaintiff.

      9.      Paragraph 5 of the Mortgage governs Defendant's obligations with respect to maintaining property insurance for the Property. Pursuant to Paragraph 5 of the Mortgage, Defendant is required to keep the Property and any improvements existing on the Property adequately insured, as more specifically set forth in Paragraph 5. In addition, Defendant is required to name Plaintiff as a mortgagee and/or additional loss payee on any such insurance policies.

      10.      Paragraph 5 sets forth the following rights and obligations with respect to insurance proceeds in the event the Property sustains an event of loss:

    (i)      Any insurance proceeds are to be applied to restoration or repair of the Property "*if the restoration or repair is economically feasible and [Plaintiff's] security is not lessened.*"

    (ii)      If the restoration or repair of the Property is **not** economically feasible or Plaintiff's security would be lessened, the insurance proceeds are to be applied to the sums secured by the Mortgage, whether or not then due, with the excess, if any, paid to Defendant.

    (iii)      If the restoration or repair of the Property is economically feasible and Plaintiff's security is not lessened, Plaintiff is entitled to hold the insurance proceeds until it has had an opportunity to inspect the Property to ensure the restoration or repair work has been completed to its satisfaction. Plaintiff may disburse proceeds for the restoration or repair work in a single payment or in a series of progress payments as the work is completed.

11.    The Property sustained a significant event of loss in March 2016 due to flooding. Plaintiff received a copy of an appraisal report prepared by Bruce Mabee of the NCA Group, which concluded that the cost to repair or restore the improvements on the Property will be well over $200,000. Plaintiff has not received any formal bids or proposals from contractors detailing the actual cost to repair or restore the Property.

12.    As a result of the above-referenced event of loss to the Property, Defendant submitted a claim, Claim Number: 01079746972015 ("*AIG Claim*"), to his property insurance carrier, AIG. Upon information and belief, Defendant has received a check or checks representing insurance proceeds from AIG in connection with the AIG Claim ("*AIG Checks*"). The AIG Checks should have been made payable to Defendant **and** Plaintiff as lienholder/mortgagee (or Colonial Savings, which is servicing the loan for Plaintiff). However, Defendant has refused to relinquish possession of the AIG Checks to Plaintiff. Instead, Defendant is claiming that he is personally going to perform the work to restore or repair the Property and demanding that all of the insurance proceeds be released to him.

13.    Accordingly, on September 9, 2016, Plaintiff's counsel sent Defendant a demand letter that notified Defendant of his obligation under the Mortgage to turn over possession of any insurance proceeds, including the AIG Checks, to Plaintiff. The demand letter further notified Defendant that Plaintiff would hold the insurance proceeds in a separate account while a determination is made regarding whether the restoration or repair of the Property is economically feasible and Mobility's security is not lessened. If it is determined that restoration or repair of the Property is economically feasible and Plaintiff's security is not lessened, Plaintiff will continue to hold the insurance proceeds in a separate account until it has inspected the Property to ensure the



work has been completed to Plaintiff's satisfaction, at which time Plaintiff would disburse the insurance proceeds in accordance with Paragraph 5 of the Mortgage.

14.     Defendant's failure to relinquish possession of the insurance proceeds, including the AIG Checks, is a breach of his obligations under the Mortgage and is a wrongful exercise of dominion or control over such property.

## VI.
## COUNT ONE: BREACH OF CONTRACT

15.     Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

16.     The Note and Mortgage are valid and enforceable agreements, and Plaintiff is a party entitled to enforce these agreements. Defendant breached the Note and/or Mortgage in material fashion, as more particularly pled in the preceding paragraphs. As a result of Defendant's breach and nonperformance, Plaintiff incurred actual damages, plus contractual pre-judgment interest, which will continue to accrue until the date of judgment.

17.     Subsequent to Defendant's breach, Plaintiff presented its claim to Defendant. Defendant has not tendered the just amount owed, which is the total amount of the insurance proceeds received in connection with the AIG Claim, including without limitation the AIG Checks. As a result, Plaintiff retained counsel to pursue its claim and seeks recovery of reasonable attorneys' fees as allowed by TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.*

18.     All conditions precedent have been performed or have occurred.

## VII.
## COUNT TWO: CONVERSION

19.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

20.     Plaintiff is entitled to possession of any insurance proceeds received in connection with the AIG Claim. By refusing Plaintiff's demands and failing to relinquish possession of any


of such insurance proceeds, including without limitation the AIG Checks, Defendant is wrongfully exercising control over this property.

21. Such actions by Defendant constitute conversion for which Plaintiff sues the Defendant.

22. All conditions precedent have been performed or have occurred.

## VIII.
## COUNT THREE: ATTORNEYS' FEES

23. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

24. Plaintiff would show the Court that the recovery of attorneys' fees is authorized as provided under and according to the provisions of Section 38.001 of the Texas Civil Practice and Remedies Code, and Plaintiff further sues for reasonable attorneys' fees, including fees for any appeal, inasmuch as Plaintiff has been required to employ the undersigned attorneys to file suit and have agreed to pay them reasonable attorneys' fees for their services. Demand has been presented to Defendant in accordance with the agreement of the parties and/or Section 38.001 of the Texas Civil Practice and Remedies Code.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant, be cited to appear herein as provided by law and that upon hearing:

1. Plaintiff recover actual damages against Defendant;

2. Plaintiff be awarded its attorneys' fees expended in the trial of this matter, as well as conditional awards for any appeals which may be taken against Defendant pursuant to its causes of action herein;

3. Pre-judgment interest be assessed on all sums awarded herein at the highest lawful rate;

4. Post-judgment interest be assessed on all sums awarded herein at the highest lawful rate;



5.     All costs of court be assessed against Defendant; and

6.     Plaintiff be awarded such other and further relief to which it may show itself justly entitled, either at law or in equity.

Respectfully submitted:

By: _____

Kyle B. Mandeville
Texas Bar No. 24065669
PASSMAN & JONES
A Professional Corporation
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
(214) 742-2121 Telephone
(214) 748-7949 Facsimile
mandevillek@passmanjones.com

COUNSEL FOR PLAINTIFF
MOBILITY CREDIT UNION

# NOTE

| September 11, 2002 | Mandeville | LOUISIANA |
|---|---|---|
| [Date] | [City] | [State] |

505 W 5th Ave, Covington, LA  70433

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $185,206.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CU Members Mortgage, a division of Colonial Savings, F.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.000 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          day of each month beginning on November 1, 2002          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2032          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 14665 Midway Road, Ste 220 Addison , TX 75001
                                                                  or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,110.41          .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

430800

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6N (0005).02          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: _GDM_
      09/10/2002 4:45:51 PM 155C1 430800

**EXHIBIT**

**A**

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

430800

 -5N (0005).02                    Page 2 of 3                    Form 3200 1/01
Initials _____

09/10/2002  4:45:51 PM  155C1  430800

EXHIBIT A

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Gaston B. Magnier                         -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                   -Borrower                                                    -Borrower

_____ (Seal)          _____ (Seal)
                                                   -Borrower                                                    -Borrower

"NE VARIETUR" FOR IDENTIFICATION
WITH AN ACT OF _____mortgage_____
PASSED BEFORE ME THIS ___11___ DAY OF
___September___ ___, 2002
NOTARY PUBLIC

*[Sign Original Only]*

430800

Ⓤ -5N (0005).02                              Page 3 of 3                              Form 3200 1/01

09/10/2002 4:45:51 PM 155C1 430800

EXHIBIT A

2 0 1 1 - 1 1 2 6 9 H

**FILED**

FEB 28 2011

DEPUTY

Return To:

CU Members Mortgage, a division of Colonial Savings, F.A.
14665 Midway Suite 220
Addison, TX. 75001
Prepared By:
Colonial Savings, F.A.

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 11, 2002 together with all Riders to this document.

430800

LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3019  1/01

-6(LA) (0102).01
Page 1 of 15    Initials:
VMP MORTGAGE FORMS - (800)521-7291
09/10/2002  4:45:51 PM 155C1 430800

St. Tammany Parish 1326
Instrmnt #: 1324535
Registry #: 1191864 BCT
09/19/2002 10:43:00 AM
MB X CB  MI  UCC

**EXHIBIT**

**B**

SCANNED

MAR 0 7 2011

EXHIBIT B

State of Louisiana, Parish of St. Tammany

I, the undersigned Deputy Clerk of Court for St. Tammany Parish Louisiana do hereby

certify that the attached is a true and correct copy of a _Mortgage_

dated the _11th_ day of _September 2002_ executed by _Gaston B._

_Mughies_ consisting of _16_ pages, executed

before _illegible_, Notary Public for the Parish/County

of _St. Tammany_ State of _Louisiana_ the original or certified copy of

which document is in my office, under Instrument Number _1324535_

or COB _____, folio _____, MOB _____, folio _____

Given under my hand and seal of office this _16th_ day of _February_, 2011

_Latousha V. Grisley_

DY. CLERK AND EX-OFFICIO RECORDER
ST. TAMMANY PARISH, LOUISIANA

EXHIBIT B

(B) "Borrower" is Gaston B. Mugnier, a single man

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is CU Members Mortgage, a division of Colonial Savings, F.A.

Lender is a Corporation
organized and existing under the laws of The United States of America
Lender's address is 14665 Midway Road, Ste 220
Addison, TX, 75001
Lender's tax identification number is 234567891          . Lender is the mortgagee under this
Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated September 11, 2002
The Note states that Borrower owes Lender one hundred eighty-five thousand two
hundred six and 00/100                                              Dollars
(U.S. $185,206.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1, 2032
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. All Riders to this
Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Exhibit "A" |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

430800
⊕◎ -6(LA) (0102).01                    Page 2 of 16        Initials: _Gbm_        Form 3019  1/01
09/10/2002 4:45:51 PM 155C1 430800

SCANNED
MAR 0 7 2011

EXHIBIT B

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **Parish**    (Type of Recording Jurisdiction) of **St. Tammany**    [Name of Recording Jurisdiction]:

DIV. OF N. COVINGTON, PARCEL 296.4 X100 X 277.55 505 WEST 5TH STREET COVINGTON, LA 70433

Parcel ID Number:   1060081329       which currently has the address of
505 W 5th Ave                               [Street]
Covington           [City], Louisiana 70433    [Zip Code]
("Property Address"):

-6(LA) (0102).01     Page 3 of 15    Initials: GBM    430800   Form 3019 1/01
09/10/2002 4:45:51 PM 155C1 430800

MAR 0 7 2011

EXHIBIT B

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

430800

-6(LA) (0102).01                  Page 4 of 16        Initials: _GBM_      Form 3019  1/01

09/10/2002 4:45:51 PM 155C1 430800

SCANNED
MAR 0 7 2011
EXHIBIT B

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

-6(LA) (0102).01                 Page 6 of 15         Initials: GDM       430800

09/10/2002 4:45:51 PM 155C1 430800                      Form 3019  1/01

SCANNED
MAR 0 7 2011

EXHIBIT B

St. Tammany Clerk of Court - Inst#1324535

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

-6(LA) (0103).01        Page 6 of 15        Initials: _____        430800

09/10/2002 4:45:51 PM 155C1 430800        Form 3019 1/01

SCANNED
MAR 0 7 2011

EXHIBIT B

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's

MAR 0 7 2011

EXHIBIT B

knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

    **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

    **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's

SCANNED
MAR 0 7 2011

EXHIBIT B

requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless

SCANNED
MAR 0 7 2011

EXHIBIT B

Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the

430800

Initials: _JBM_

-6(LA) (0103).01            Page 10 of 16            Form 3019   1/01
09/10/2002 4:45:51 PM 155C1 430800

SCANNED
MAR 0 7 2011
EXHIBIT B

reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited

430800

-6(LA) (0102).01                                    Page 11 of 15          Initials: GPM          Form 3019   1/01

09/10/2002 4:45:51 PM 155C1 430800

SCANNED
MAR 0 7 2011

EXHIBIT B

to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

6(LA) (0102).01      Page 12 of 15      Initials: _____      430800

Form 3019 1/01

09/10/2002 4:45:51 PM 155C1 430800

MAR 0 7 2011

EXHIBIT B



St. Tammany Clerk of Court - Inst#1324535

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Notice of Default; Right to Cure. Lender shall give notice to Borrower prior to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure as available under Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

23. Foreclosure. Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the demand and three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three-days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2733 of the Louisiana Code of Civil Procedure and all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. Section 9:3504(D)(6).

24. Cumulative Remedies. Lender shall have such additional default remedies as may be available under then Applicable Law. All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

25. Keeper. Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. Section 9:5136, *et. seq.* Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

6-6(LA) (0107).01          Page 13 of 16          430800          Form 3019   1/01

initials: _GBM_

09/10/2002 4:45:51 PM 155C1 430800

MAR 0 7 2011
EXHIBIT B

 
without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

36. **Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

THUS DONE, AND PASSED, on this 11 day of September, 2002, in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

WITNESS(ES) (as to all signatures):

_______________ 

_______________

_______________ (Seal)
Gaston B. Mugnier -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________
Notary qualified in
St. Tammany Parish, Louisiana

430800

MAR 07 2011

EXHIBIT B

State of LOUISIANA
Parish of St. Tammany

## NOTARIAL ENDORSEMENT AND ASSIGNMENT
### OF MORTGAGE NOTE AND MORTGAGE

On October 4, 2002 , before me, the undersigned Notary Public and in the presence of the undersigned witnesses:

Personally came and appeared CU Members Mortgage, a division of Colonial Savings, F.A.

(the "Assignor"), a Federal Association corporation, having its place of business at 14665 Midway Road, Ste 220, Addison, TX 75001 , represented herein by Nancy Sutphen , its duly authorized Vice President , who declared:

That for value received, the Assignor does hereby assign, transfer, sell and deliver to Southwest IBM Employees Federal Credit Union a corporation organized and existing under the laws of The State of Texas , whose address is P.O. Box 630428, Irving, TX 75063 , one certain mortgage note, made and subscribed by Gaston B. Mugnier, a single man

dated September 11, 2002 , payable to the order of CU Members Mortgage, a division of Colonial Savings, F.A. which mortgage note is secured by a mortgage of even date therewith, executed by the same parties, in the same amount, and so paraphed by a Notary Public, Louisiana, recorded on under Registry No.

That Assignor is the legal and equitable owner of the said note and mortgage with full power to sell and assign the same; that it has executed no prior assignment or pledge thereof; that it has executed no release, discharge, satisfaction or cancellation of said mortgage; that it has executed no release of any portion of the security described in said mortgage; and, that it has executed no instrument of any kind affecting the mortgage or the note or the liability of the maker or makers thereof.

Louisiana Assignment of Mortgage      1/93
VMP-995(LA) (9801).01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 2      Initials:
09/26/2002 12:36:34 PM 155C1 430800

EXHIBIT C



This done and signed in my office at , Fort Worth, Texas , Louisiana
on the date first hereinabove written, in the presence of the undersigned competent witnesses and me,
Notary, after due reading of the whole. ,without recourse on the undersigned.

Signed in the presence of and attested by:

CU Members Mortgage, a division of
Colonial Savings, F.A.
Assignor

By: _____
Name: Nancy Sutphen
Title: Vice President

WITNESS Sabrina Whitworth

WITNESS Rosa Iniguez

My Commission Expires:

_____
Notary Public

Recording Requested By/Return To:

R. FAMBROUGH
Notary Public
STATE OF TEXAS
My Comm. Exp. 10/25/2005

This Instrument Prepared By:
Colonial Savings, F.A.
2626A West Freeway, Ft. Worth, TX
76102

995[LA] (9901).01
09/26/2002 12:36:14 PM 155C1 430800

Page 2 of 2

EXHIBIT C

## ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this Allonge is affixed and becomes a permanent part of said Note:

Note Date: <u>September 11, 2002</u>                Original Amount: <u>185,206.00</u>

Borrower Name(s):   <u>Gaston B. Mugnier, a single man</u>   .

Property Address: <u>505 W 5th Ave, Covington, LA  70433</u>

Loan # <u>430800</u>

PAY TO THE ORDER
Southwest IBM Employees Federal Credit Union

WITHOUT RECOURSE
CU Members Mortgage, a division of Colonial Savings, F.A.

By: _Nancy Sutphen_____

Printed Name: <u>Nancy Sutphen</u>

Title: <u>Vice President</u>

EXHIBIT C

FILED
DALLAS COUNTY
10/4/2016 12:46:25 PM
FELICIA PITRE
DISTRICT CLERK

Meghan Andrewartha
E-SERVE (SOS)

CITATION

No.: DC-16-12531

MOBILITY CREDIT UNION
VS.
GASTON B. MUGNIER

ISSUED
ON THIS THE 26TH DAY OF
SEPTEMBER, 2016

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By ARIEANA BAHENA, Deputy

Attorney for : Plaintiff
KYLE B. MANDEVILLE
1201 ELM ST STE 2500
DALLAS TX 75270
(214) 742-2121
mandevillek@passmanjones.com

DALLAS COUNTY
SERVICE FEES
NOT PAID

FORM NO. 353-4—CITATION
THE STATE OF TEXAS

To:     GASTON B. MUGNIER
BY SERVING THE OFFICE OF THE SECRETARY OF STATE CITATIONS UNIT
P.O. BOX 12079
AUSTIN, TX 78711-2079

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.
Your answer should be addressed to the clerk of the **101st District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **MOBILITY CREDIT UNION**

Filed in said Court 19th day of September, 2016 against
**GASTON B. MUGNIER**

For suit, said suit being numbered  **DC-16-12531**  the nature of which demand is as follows:
Suit On **CNTR CNSMR COM DEBT** etc.
as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 26th day of September, 2016**
ATTEST: FELICIA PITRE
Clerk of the District Courts of Dallas, County, Texas

By _____ /s/ Arieana Bahena _____ Deputy
                              **ARIEANA BAHENA**

Cause No. DC-16-12531

Court No: 101st District Court

Style: MOBILITY CREDIT UNION
vs.
GASTON MUGNIER

## OFFICER'S RETURN
### FOR INDIVIDUALS

Received this Citation the _____ day of _____, 20 ____ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 ____ at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

------000000------

## OFFICER'S RETURN
### FOR CORPORATIONS

Received this Citation the _____ day of _____, 20 ____ at _____ o'clock ____.M. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 ____, at _____ o'clock _____.M. by summoning the within named Corporation, _____ by delivering to _____ President - Vice President - Registered Agent - in person, of the said _____ a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

------000000------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:      To certify which witness by my hand.

For Serving Citation   $ _____
For Mileage          $ _____      Sheriff
For Notary           $ _____      County of
      Total Fees     $ _____      State of
                                  By

(Must be verified if served outside the State of Texas)

State of _____

County of _____

Signed and sworn to me by the said _____ before me this _____ day of _____, 20 ____, to certify which witness my hand and seal of office.

Seal

State & County of _____

English        Customer Service        USPS Mobile                                    Register / Sign In



# USPS Tracking®

**Still Have Questions?**
Browse our FAQs ›



Get Easy Tracking [
Sign up for My USPS.

Tracking Number: **70153010000096040217**

On Time
Updated Delivery Day: **Friday, September 30, 2016**

## Product & Tracking Information

**Available Actions**

Text Updates

Email Updates

| Postal Product: | Features: | |
|---|---|---|
| First-Class Mail® | Certified Mail™ | Return Receipt |
| | See tracking for related item: 9590940303465163388015 | |

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **September 30, 2016 , 8:46 am** | Delivered | **AUSTIN, TX 78711** |

Your item was delivered at 8:46 am on September 30, 2016 in AUSTIN, TX 78711.

| | | |
|---|---|---|
| September 30, 2016 , 7:54 am | Arrived at Unit | AUSTIN, TX 78711 |
| September 30, 2016 , 4:06 am | Departed USPS Destination Facility | AUSTIN, TX 78710 |
| September 29, 2016 , 1:35 pm | Arrived at USPS Destination Facility | AUSTIN, TX 78710 |
| September 28, 2016 , 10:05 pm | Departed USPS Facility | NORTH TEXAS PROCESSING AND DISTRIBUTION CENTER |
| September 28, 2016 , 8:41 pm | Arrived at USPS Origin Facility | NORTH TEXAS PROCESSING AND DISTRIBUTION CENTER |
| September 28, 2016 , 5:34 pm | Departed Post Office | DALLAS, TX 75238 |
| September 28, 2016 , 4:17 pm | Acceptance | DALLAS, TX 75238 |

## Track Another Package

## Manage Incoming Package

Tracking (or receipt) number

| | | Track it |
|---|---|---|

Track all your packages from a dashboard.
No tracking numbers necessary.

**Sign up for My USPS ›**

| HELPFUL LINKS | ON ABOUT.USPS.COM | OTHER USPS SITES | LEGAL INFORMATION |
|---|---|---|---|
| Contact Us | About.USPS Home | Business Customer Gateway | Privacy Policy |
| Site Index | Newsroom | Postal Inspectors | Terms of Use |
| FAQs | USPS Service Updates | Inspector General | FOIA |
| | | | FEAR Act EEO Data |

Copyright © 2016 USPS. All Rights Res

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

AUSTIN, TX 78711    OFFICIAL USE

Certified Mail Fee **$3.30**                                  9238
$ _____ $2.70 _____                                  73
Extra Services & Fees (check box, add fee)
☐ Return Receipt (hardcopy)          $ ___$0.00___
☐ Return Receipt (electronic)        $ ___$0.00___          Postmark
☐ Certified Mail Restricted Delivery $ ___$0.00___          Here
☐ Adult Signature Required           $ ___$0.00___          SEP 28 2016
☐ Adult Signature Restricted Delivery $ ___$0.00___
Postage        **$3.04**
$
Total Postage and Fees                 2016
$ ___$9.04___
Sent To Office of the Secretary of State, Citations
Unit, Agent for Gaston B. Mugnier
Street P.O. Box 12079
City Austin, Texas 78711-2079

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 3010 0000 9604 0217

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Office of the Secretary of State, Citations
Unit, Agent for Gaston B. Mugnier
P.O. Box 12079
Austin, Texas 78711-2079

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent
                              ☐ Addressee
B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

TPASSICP
SEP 30 2016

|||||||||||||||||||||||||||||||||
9590 9403 0546 5163 3880 15

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7015 3010 0000 9604 0217

PS Form 3811, April 2015 PSN 7530-02-000-9053    Domestic Return Receipt

# Alan R. Davis

## P. O. Box 38066
## Dallas, Texas 75238

Cell: 214.893.8956

Email:ad@investigationsltd.net

Texas Authorized Process Server No. SCH-399

Via CMRRR: 7015.3010.0000.9604.0217

Wednesday, September 28, 2016

Texas Secretary of State
Office of the Secretary of State
Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

Re:   Mobility Credit Union vs. Gaston B. Mugnier
      DC-16-12531 (Dallas 101st)
      Serve: Gaston B. Mugnier

Dear Sir or Madam:

Enclosed is an original and copy of a Citation and Plaintiff's Original Petition to Defendant Gaston B. Mugnier that per the Petition is being served upon the Secretary of State as Agent for Service of Process pursuant to Tex. Civ. Prac & Rem. Code 17.042, 17.044(a)(1) and/or (b) and 17.045(a). Also enclosed is check 3259 in the amount of $55.00.

The Defendant's name and address is:

Gaston B. Mugnier
505 West 5th Street
Covington, LA 70433

Please return the Certificate to:

Kyle B. Mandeville
Passman & Jones
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599

Sincerely,

Alan R. Davis



101st District Court
GEORGE L. ALLEN, SR. COURTS BUILDING
600 COMMERCE STREET
DALLAS, TEXAS  75202-4604
October 17, 2016

KYLE B. MANDEVILLE
2500 RENAISSANCE TOWER
1201 ELM ST STE 2500
DALLAS TX  75270

      Re:   MOBILITY CREDIT UNION  vs.  GASTON MUGNIER
             DC-16-12531

All Counsel of Record/Pro Se Litigants:

This letter is to advise you that this matter is set for a DISMISSAL FOR WANT OF
PROSECUTION hearing on **November 17, 2016** at **9:00 AM** in this Court.

Sincerely,

STACI WILLIAMS
Presiding Judge

SW/ls
pc:  KYLE B. MANDEVILLE

RECEIVED

OCT 2 4 2016

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## Supplemental Civil Cover Sheet for Cases Removed From State Court

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.**

1. **State Court Information:**

   Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

   | Court | Case Number |
   |---|---|
   | 101st District Court, Dallas County, TX | DC-16-12531 |

2. **Style of the Case:**

   Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

   | Party and Party Type | Attorney(s) |
   |---|---|
   | Mobility Credit Union - Plaintiff | Kyle B. Mandeville |
   | Gaston Mugnier - Defendant | Proper person |
   | | |
   | | |
   | | |

3. **Jury Demand:**

   Was a Jury Demand made in State Court?  ☐ Yes   ☑ No

   If *"Yes,"* by which party and on what date?

   _____          _____
   Party                                              Date

Supplemental Civil Cover Sheet
Page **2** of **2**

4. **Answer:**

   Was an Answer made in State Court? ☐ Yes ☑ No

   If "*Yes*," by which party and on what date?

   _____          _____
   Party                               Date

5. **Unserved Parties:**

   The following parties have not been served at the time this case was removed:

   | Party | Reason(s) for No Service |
   |-------|--------------------------|
   |       |                          |
   |       |                          |
   |       |                          |
   |       |                          |
   |       |                          |

6. **Nonsuited, Dismissed or Terminated Parties:**

   Please indicate any changes from the style on the State Court papers and the reason for that change:

   | Party | Reason |
   |-------|--------|
   |       |        |

7. **Claims of the Parties:**

   The filing party submits the following summary of the remaining claims of each party in this litigation:

   | Party | Claim(s) |
   |-------|----------|
   | Mobility Credit Union | Damages, Attorney Fees, Interest, court costs |

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mobility Credit Union

**DEFENDANTS**
Gaston Mugnier

**3 - 16 C V - 2 9 6 8 G**

OCT 2 4 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

**(b)** County of Residence of First Listed Plaintiff    Dallas County, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Kyle B. Mandeville
1201 Elm St. Suite 2500
Dallas TX 75270

Attorneys *(If Known)*
Gaston Mugnier - proper person
505 West 5th Avenue.
Covington, LA 70433

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ❏ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 840 Trademark | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine | Injury Product | | | ❏ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | | **SOCIAL SECURITY** | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | Relations | ❏ 864 SSID Title XVI | Exchange |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 890 Other Statutory Actions |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 751 Family and Medical | | ❏ 891 Agricultural Acts |
| | ❏ 362 Personal Injury - | Product Liability | Leave Act | | ❏ 893 Environmental Matters |
| | Medical Malpractice | | ❏ 790 Other Labor Litigation | | ❏ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | or Defendant) | ❏ 899 Administrative Procedure |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act/Review or Appeal of |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of |
| ☒ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | |
| | Other | ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ❏ 3  Remanded from Appellate Court
- ❏ 4  Reinstated or Reopened
- ❏ 5  Transferred from Another District *(specify)*
- ❏ 6  Multidistrict Litigation - Transfer
- ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Enforcement of Mortgage Rights

## VII. REQUESTED IN COMPLAINT:
❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
200,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ❏ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  Richard A Schwarz
DOCKET NUMBER  2016-11090

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  94939    AMOUNT  $400.00    APPLYING IFP    JUDGE    MAG. JUDGE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.

PRESS FIRMLY TO SEAL

FOR DOMESTIC AND INTERNATIONAL USE

U.S. POSTAGE
PAID
COVINGTON, LA
70433
OCT 20, 16
AMOUNT
$22.95
R2304H108978-03
1007
75242

PRIORITY
★ MAIL ★
EXPRESS™

UNITED STATES
POSTAL SERVICE®

EL027093315US

ORIGIN (POSTAL SERVICE USE ONLY)

☐ DPO

PO ZIP Code          Scheduled Delivery Date          ☐ Military          Postage
70433               (MM/DD/YY)                                          $ 22.95
                    10-21-16

Date Accepted (MM/DD/YY)   Scheduled Delivery Time    Insurance Fee    COD Fee
                           ☐ 10:30 AM  ☐ 3:00 PM                        $
                           ☑ 12 NOON
Time Accepted              ☐ 10:30 AM Delivery Fee    Return Receipt Fee   Live Animal
            ☐ AM                                                        Transportation Fee
4:30        ☑ PM           $                          $                 $

Weight      ☐ Flat Rate    Sunday/Holiday Premium Fee  Total Postage & Fees
lbs.  oz.                                              $ 22.95
                           $
                           Acceptance Employee Initials

DELIVERY (POSTAL SERVICE USE ONLY)
Delivery Attempt (MM/DD/YY)  Time   ☐ AM      Employee Signature
                                    ☐ PM
Delivery Attempt (MM/DD/YY)  Time   ☐ AM      Employee Signature
                                    ☐ PM

LABEL 11-B, JANUARY 2014          PSN 7690-02-000-9996          3-ADDRESSEE COPY

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)   PHONE ( 985 ) 380-5340
Magnus
505 West 5th Ave
Covington, L.A. 70433

PAYMENT BY ACCOUNT (if applicable)

DELIVERY OPTIONS (Customer Use Only)

☐ SIGNATURE REQUIRED Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

Delivery Options
    ☐ No Saturday Delivery (delivered next business day)
    ☐ Sunday/Holiday Delivery Required (additional fee, where available*)
    ☐ 10:30 AM Delivery Required (additional fee, where available*)
    *Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)   PHONE (            )
U.S. District Court
1100 Commerce St.
Room 1452
Dallas, Texas 75242

ZIP + 4® (U.S. ADDRESSES ONLY)

WRITE FIRMLY TO MAKE ALL COPIES LEGIBLE.

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

VISIT
ORDER

X-RAY

MAILROOM