UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MOBILITY CREDIT UNION** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:16-CV-2968 |
| | § | |
| **GASTON MUGNIER** | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE
<u>REQUEST FOR JURISDICTIONAL DISCOVERY</u>**

**TABLE OF CONTENTS**

I. BACKGROUND & PRELIMINARY STATEMENT ................................................... 1

II. ARGUMENT & AUTHORITIES ................................................................................ 3

    A. Legal Standard for Personal Jurisdiction. ............................................... 3

    B. Defendant has Minimum Contacts with Texas. ....................................... 7

    C. This Court Can Exercise Either General or Specific Jurisdiction Over Defendant. 9

    D. Defendant Has Not and Cannot Present a Compelling Case that the Court's Exercise of Personal Jurisdiction Over Him is Unreasonable. ............................. 10

III. AT A MINIMUM, PLAINTIFF IS ENTITLED TO JURISDICTIONAL DISCOVERY ................................................................................................................ 11

IV. CONCLUSION ........................................................................................................... 12

# **TABLE OF AUTHORITIES**

**CASES**

*Betafence USA, L.L.C. v. Davis Distributing, Inc. of Liberty*, 2012 WL 5182909 (N.D. Tex. 2012) (Boyle, J.) .................................................................................................................. 8, 9

*Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir.1980) ........................................................ 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ................................................ 3, 4, 5, 6

*Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 (5th Cir. 2003) ............... 5

*Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir.1997) ................................. 12

*Command-Aire Corp. v. Ontario Mechanical Sales and Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992) .......................................................................................................................................... 5, 6

*Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 n. 7 (11th Cir. 1982) .................................... 12

*Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999) ..... 8

*El-Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996) .......................................... 12

*Exhibit Icons, LLC v. XP Companies, LLC*, No. 07-80824, 2008 WL 616104, at *1 (S.D. Fla., March 3, 2008) ............................................................................................................................. 11

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999) ........................................... 3

*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) .............................................................................. 4

*Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) ........................................................ 11

*Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999) .................................................................. 5, 6

*Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.1973) ................................................. 12

*Majd-Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir.1984) ............... 12

*Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921, 923 (5th Cir. 1981) ....................................................................................................................................... 5

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 224 (1957) .................................................................. 7

*Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351 n. 13 (1978) ........................................... 11, 12

*Seghers v. El Bizri,* 513 F. Supp.2d 694, 700 (N.D. Tex. 2007) (Fish, J.) ............................ 3, 4, 9

*Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244, 1248-49 (5th Cir.1976) ......................... 12

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) .................................... 6, 7

**STATUTES**

FED. R. CIV. P. 12(b)(2) ................................................................................................................ 3

FED. R. CIV. P. 12(b)(3) .............................................................................................................. 13

TO THE HONORABLE COURT:

Plaintiff Mobility Credit Union ("*Mobility*" or "*Plaintiff*") files this Response in Opposition to the Motion to Dismiss [Doc. No. 8] (the "*Motion*") filed by Defendant Gaston Mugnier ("*Defendant*") and Alternative Request for Jurisdictional Discovery and respectfully shows the Court as follows:

### I.   BACKGROUND & PRELIMINARY STATEMENT

This is a dispute over insurance proceeds issued under a homeowner's insurance policy.

Defendant Gaston Mugnier received approximately $250,000 from his homeowner's insurance carrier, AIG, as a result of *significant* damage to his home, located at 505 W. 5th Ave., Covington, Louisiana 70433 ("*Property*"), caused by flooding.

Plaintiff is the owner of the Note and Mortgage associated with Defendant's home.[1] Plaintiff acquired the Note and Mortgage by assignment from CU Member Mortgage, a division of Colonial Savings ("*CU Member Mortgage*").  CU Member Mortgage continues to service the Note and Mortgage for Plaintiff.

As lienholder, Mobility obviously has an interest in the condition of the Property. Assuming restoration and repair of the Property is economically feasible, it is in both Plaintiff's and Defendant's interest that the Property is promptly repaired and restored in a good and workmanlike manner.  Mobility is afforded rights in the Mortgage to hold the insurance proceeds until it has had an opportunity to inspect the work performed to restore and repair the Property. *See* Exhibit 1-B at p. 7 (Appx. p. 0018).  Mobility can disburse the insurance proceeds to the contractors in a single payment or series of payment as soon as Mobility is satisfied the construction work has been completed in a good and workmanlike manner.  *Id.*  This is standard procedure when an insured property that is subject of a mortgage sustains significant damage.

---

[1] The terms "Note" and "Mortgage" are defined in the Affidavit of Sidney Burkins.

Unfortunately, Defendant has refused to turnover possession of the insurance proceeds to Plaintiff or CU Member Mortgage as he is obligated do under the Mortgage. Defendant insists that *he* is going to perform all the work to restore and repair the Property and claims he is entitled to the insurance proceeds without restriction or oversight. Defendant's position has no basis in law or fact. Indeed, Defendant's claim to exclusive control over the insurance proceeds is especially troubling to Mobility considering that: (i) Defendant has not made a monthly payment under the Note in over 550 days, (ii) Defendant owes $25,593.43 in past due monthly mortgage payments, and (iii) Defendant has filed bankruptcy twice in the past two years. Exhibit 1 at ¶¶ 9-10 (Appx. p. 0003).

Defendant's Motion to Dismiss is simply his latest effort to obstruct Plaintiff from enforcing its rights under the Note and Mortgage. The Motion to Dismiss argues that Defendant lacks the requisite minimum contacts with Texas for this Honorable Court to have personal jurisdiction over him. The only "evidence" supporting the Motion to Dismiss is a Declaration by Mr. Mugnier that says, in conclusory fashion, that he is domiciled in Louisiana and that his only contacts with Texas is to mail mortgage payments to a Texas address as required by the Mortgage. The latter statement is simply not true; as set forth in more detail below, Mr. Mugnier has a long history of applying for and obtaining credit in the State of Texas. In fact, Mr. Mugnier's Declaration is controverted by his own Bankruptcy Schedules, signed by him under penalty of perjury, which reveal that Mr. Mugnier has established multiple banking relationships with Texas financial institutions, including Plaintiff, for almost two decades. Exhibit 1-E (Appx. pp. 0042, 0048, 0054). Mr. Mugnier also previously certified that he was President and CEO of a company located in Lufkin, Texas. Exhibit 1-H (Appx. pp. 0098, 00100).

In short, Mr. Mugnier's contacts with Texas are more than sufficient for the Court to exercise personal jurisdiction over him, and, therefore, the Motion to Dismiss should be denied.

## II.   ARGUMENT & AUTHORITIES

### A.   Legal Standard for Personal Jurisdiction.

#### i.   The Standard for Personal Jurisdiction in a Diversity Suit.

When a nonresident defendant moves to dismiss under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction, a plaintiff may meet his burden by presenting a *prima facie* case for personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In doing so, the plaintiff is entitled to have the allegations in its Complaint taken as true. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The Court must also resolve all factual disputes in the plaintiff's favor. *Id*.

Once a plaintiff has met its *prima facie* burden, the burden then shifts to the defendant to defeat jurisdiction by presenting a "compelling case" that the exercise of jurisdiction would be unfair or unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal district court may exercise personal jurisdiction over a nonresident defendant if: (a) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant, and (b) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *See Seghers v. El Bizri*, 513 F. Supp.2d 694, 700 (N.D. Tex. 2007) (Fish, J.). In a diversity suit, such as this one, a defendant is amenable to personal jurisdiction to the same extent he would be amenable to the jurisdiction of a state court in the same forum. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits of the United States Constitution, this Court need only consider the federal due process inquiry. *Id*.

### ii. Federal Due Process Requirements.

For the Court to exercise personal jurisdiction over a nonresident defendant, federal due process requires: (i) the nonresident must have some minimum contact with the forum (Texas) that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (ii) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Id*. At 701.

There are two types of personal jurisdiction that courts may exercise over nonresident defendants: specific jurisdiction and general jurisdiction. *Id*. Specific jurisdiction exists if a cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. General jurisdiction, in contrast, may be found when the nonresident's contract with forum are "continuous and systematic" even though the claim is unrelated to those contacts. *Id*.

### a) The "Minimum Contacts" Requirement.

Minimum contacts are established when a defendant purposely directs its activities toward the forum and thereby purposefully avails itself of the privileges and legal protections of conducting business in the forum. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Courts reason it is unfair to allow a defendant to escape accountability in the forum for consequences arising from its activities therein. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985).

Purposeful availment to the protections and privileges of doing business in the forum can occur when a defendant affirmatively establishes an ongoing business relationship with a forum entity. *See id*. at 479. The Supreme Court has found certain factors indicative of purposeful availment, including the parties' prior negotiations, course of dealing, and contemplated future consequences, along with the terms of the applicable contract(s). *See id*. at 475-76. A physical

presence or intrusion into the forum by a defendant is not required to establish minimum contacts. *See id*. at 476.

In cases involving the interpretation of a written contract, minimum contacts can exist in a forum (*e.g.*, Texas) even though the contract contains a choice-of-law provision that incorporates the law of a different forum (*e.g.*, Indiana or Louisiana).[2] For example, the Fifth Circuit found minimum contacts existed when a defendant "specifically and deliberately 'reached out' to a Texas Corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship." *See Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 (5th Cir. 2003). In so finding, the court reasoned that "by entering into the [agreement], [the defendant] knew that it was affiliating itself with an enterprise based primarily in [the forum]." *See id.*

Similarly, the Fifth Circuit has held that a non-forum defendant purposefully availed himself of the laws of Texas when he guaranteed a credit transaction with a Texas entity that involved periodic advances of credit over many months. See *Marathon Metallic Building Co. v. Mountain Empire Construction Co.*, 653 F.2d 921, 923 (5th Cir. 1981).

In his Motion to Dismiss, Defendant cites to *Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999) and *Command-Aire Corp. v. Ontario Mechanical Sales and Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992) as examples of cases favoring dismissal, but these cases actually support Plaintiff's position.

In *Latshaw*, the Fifth Circuit reversed a trial court's dismissal of a cause of action based on lack of personal jurisdiction. *Latshaw v. Johnston*, 167 F.3d 208 (5th Cir. 1999). The basis

---

[2] The Mortgage does not really provide "the laws of the State of Louisiana govern" as stated by Defendant. *See* Exhibit 1-B (Appx. at p. 0022). The Mortgage is a form document that provides "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the property is located." *Id.* Therefore, this factor is neutral or, at minimum, should be given less weight.

of the Fifth Circuit's decision was that the trial court did not accept the Plaintiff's allegations as true as it must at this stage of the proceedings. *Id.* at 213. The plaintiff in *Latshaw* alleged the defendant entered into an ongoing business relationship with a Texas resident and made multiple trips and phone calls to Texas in furtherance of that relationship. *Id.*

In *Command-Aire*, the Fifth Circuit affirmed a trial court's decision to exercise personal jurisdiction over a nonresident defendant. *Command-Aire Corp. v. Ontario Mechanical Sales and Serv., Inc.*, 963 F.2d 90, 94-95 (5th Cir. 1992). In its analysis of personal jurisdiction over the defendant, the Fifth Circuit acknowledged the place where a contract is performed is a weighty consideration. *Id.* at 94. Contrary to Defendant's characterization, however, the Court did not say anything to support Defendant's conclusory argument that performance of the Note and Mortgage occurred entirely in Louisiana. In fact, in concluding that Texas was where the contract was performed, the Fifth Circuit considered it important that the defendant in *Command-Aire* (OMS) purposefully engaged a Texas resident for an ongoing business relationship and agreed to mail payments to Texas. *See id.*

  b) **Traditional Notions of Fair Play and Substantial Justice.**

Once the plaintiff presents *prima facie* evidence of minimum contacts and relatedness, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable in light of the surrounding circumstances. *Burger King*, 471 U.S. at 477. As the Supreme Court explained in *World-Wide Volkswagen Corp. v. Woodson*,

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief…; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (internal citations omitted).

Efficient and cost-effective modes of transportation (*i.e.* commercial airlines) and methods of communication (*i.e.* e-mail and facsimile) have made it increasingly difficult for a defendant to demonstrate it is unreasonably burdensome to defend itself in a forum where it engaged in economic activity. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 224 (1957).

B.    **Defendant has Minimum Contacts with Texas.**

For almost two decades, Defendant has repeatedly directed activities related to his personal and professional banking needs towards Texas.  Defendant is clearly willing to avail himself of credit from financial institutions located in Texas, especially Mobility, thus it would be unfair to allow Defendant to escape accountability in Texas for consequences arising from his activities therein.  Defendant established minimum contacts in Texas by virtue of his continuous and systematic applications for credit with financial institutions in Texas, including Plaintiff.  By Defendant's own admission, over the past eighteen years he has applied for and obtained credit in Texas, mostly from Plaintiff, on at least six occasions:

（a）    Applied for and opened personal checking account with Plaintiff in December 1998, which account is still open;

（b）    Applied for and opened line of credit (credit card) with Plaintiff in January 1999, which line of credit remained active until October 2004;

（c）    Applied for and obtained an auto loan with Plaintiff in February 1999, which loan remained active until January 2004;

（d）    Applied for and opened a business checking account with Plaintiff in August 2001, which account remains active;

（e）    Applied for and obtained a mortgage loan with CU Member Mortgage (this is the loan that is the subject of the current dispute) in September 2002, which loan remains active;

      (f)      Applied for and opened another business checking account with Plaintiff in August 2001, which account remains active; and

      (g)      Opened an account with USAA in San Antonio.

*See* Exhibit 1-E (Appx. at pp. 0042, 0048, 0054).[3]

Each of these transactions standing alone represents two things: (i) an affirmative step by Defendant of applying for and obtaining credit in Texas and (ii) an ongoing business relationship between Defendant and a financial institution located in Texas.[4] Viewed together, these transactions show a consistent pattern of Defendant purposefully choosing to use financial institutions located in Texas for many, if not most, of his banking needs. *See* Exhibit 1-E (Appx. at pp. 0042, 0048, 0054).

In addition, Defendant is or was President and CEO of a company located in Lufkin, Texas named Diversified Endeavors, LLC.[5] Exhibit 1-H (Appx. pp. 0098, 0100).

The contacts accompanying each of the above-referenced credit transactions, in addition to Defendant serving as President and CEO of a company located in Texas, cannot be viewed as "random," "fortuitous," or "attenuated." *See, e.g., Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 873 (5th Cir. 1999).

Another Court in the Northern District of Texas recently found a defendant established minimum contacts with Texas under similar circumstances. *Betafence USA, L.L.C. v. Davis Distributing, Inc. of Liberty*, 2012 WL 5182909 (N.D. Tex. 2012) (Boyle, J.). Like this case, *Betafence* involved a contractual dispute between a resident plaintiff (Betafence) and a nonresident defendant (Davis Distributing). *Id.* at *1. Davis Distributing initiated contact with Betafence by phone, inquiring about Betafence's products. *Id.* Davis Distributing then

---

[3] Defendant's Bankruptcy Schedules are corroborated by Defendant's account documents with Mobility, which are discussed in and attached to the Affidavit of Sidney Burkins. Exhibit 1 at ¶¶ 11-15 (Appx. pp. 0003-0005).
[4] With respect to the loans, Defendant agreed to remit monthly payments to Texas.
[5] Details regarding operations of Diversified Endeavors, LLC and Defendant's involvement in same would, if necessary, be one of the subjects of jurisdictional discovery. *See* Section III, *infra*.

submitted a credit application, via e-mail, to Betafence. *Id*. It was clear from documents submitted that Davis Distributing understood Betafence was located in Texas. *Id*. The parties contract (which was evidenced by a purchase order from Davis Distributing and a sales order from Betafence) identified Texas as the place of performance for the contract – *i.e.*, where the goods would be delivered. *Id*. Based on these facts, among others, Judge Boyle concluded Davis Distributing had established minimum contacts in Texas by purposefully taking affirmative actions which caused foreseeable business activity in Texas. *Id*. at *6.

The same reasoning is applicable in this case. Defendant initiated long-term banking relationships with at least two financial institutions located in Dallas County, Texas – Plaintiff and CU Members Mortgage by submitting credit applications. Furthermore, like Davis Distributing, Defendant agreed to at least partially perform his obligations under the Note and Mortgage by sending monthly payments to Dallas County, Texas.

Accordingly, Defendant has clearly established minimum contacts with Texas.

C.    **This Court Can Exercise Either General or Specific Jurisdiction Over Defendant.**

Under either general or specific jurisdiction analysis, the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' with the forum state. *See Seghers v. El Bizri*, 513 F. Supp.2d 694, 701-02 (N.D. Tex. 2007) (Fish, J.). Here, the Court may exercise either general or specific jurisdiction over Defendant.

As set forth above, Defendant's contacts with Texas are the type of "continuous and systematic" contacts that give rise to general jurisdiction. The Defendant has repeatedly applied for and obtained credit from financial institutions located in Texas, including Plaintiff. *See* Exhibit 1 at ¶¶ 6-15 (Appx. pp. 0002-0005).

Even assuming, *arguendo*, the Court concludes it does not have general jurisdiction over Defendant, the Court still has jurisdiction because this dispute clearly relates to or arises out of

Defendant's contacts with Texas, subjecting Defendant to specific jurisdiction. Defendant applied for a mortgage loan with CU Members Mortgage, a division of Colonial Savings, located in Dallas County, Texas. Exhibit 1-C (Appx. pp. 0026-0033). Defendant's application for a mortgage loan gave rise to the Note and Mortgage. Exhibit 1 at ¶ 7 (Appx. p. 0002). In connection with the Note and Mortgage, Defendant agreed to send monthly payments to CU Members Mortgage in Addison, Texas. Exhibit 1-A (Appx. p. 0007). Plaintiff is the assignee of CU Members Mortgage's interest in the Note and Mortgage[6] and is seeking to enforce certain terms of the Mortgage in this case. Exhibit 1-D (Appx. pp. 0034-0037).

As a result, the Court can exercise of general or specific jurisdiction over Defendant.

**D.    Defendant Has Not and Cannot Present a Compelling Case that the Court's Exercise of Personal Jurisdiction Over Him is Unreasonable.**

As demonstrated above, Plaintiff has presented *prima facie* evidence of minimum contacts and relatedness; therefore, Defendant must present a "compelling case" that the exercise of jurisdiction over it is unreasonable in light of the surrounding circumstances. In light of the fact that Defendant has repeatedly availed himself of credit from financial institutions located in Texas, Defendant cannot satisfy his burden.

Defendant makes three arguments as to why it is unfair and unjust for a Texas court to exercise jurisdiction over him.

First, Defendant states that Plaintiff writes mortgages in Louisiana, which is not true. Plaintiff is a state-chartered credit union with offices exclusively in Texas. Exhibit 1 at ¶ 3 (Appx. pp. 0001-0002). Plaintiff does not have any branch offices in Louisiana. *Id.* Further, the Mortgage at issue was originated by CU Mortgage Members in Addison, Texas, not Louisiana. Exhibits 1-A and 1-B (Appx. pp. 0006-0025).

---

[6] CU Members Mortgage still services the Note and Mortgage for Plaintiff. Exhibit 1 at ¶ 8 (Appx. p. 0003).

Second, Defendant argues it is very difficult and inconvenient to defend himself in Texas. Defendant offers no evidence to support this conclusory statement. It is also ironic that Defendant apparently finds it easy and convenient to apply for and obtain credit in Texas, but "difficult" and "inconvenient" to defendant a lawsuit in Texas. In addition, advancements in technology (*e.g.*, electronic filing and e-mail) should significantly lessen the burden of defending this suit in this forum.

Third, Defendant argues that Plaintiff "has no problem suing me in Louisiana and this suit should go there too." The lawsuit Defendant is referencing is a foreclosure proceeding filed in Louisiana State Court *before* Defendant received the insurance proceeds subject of this lawsuit. Obviously, because of the Local Action Doctrine and mandatory venue rules for foreclosure proceedings, Plaintiff had to bring the suit for judicial foreclosure in the Louisiana State Court. *See Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir. 1987) (explaining Local Action Doctrine); LSA–C.C.P. art. 2633. The filing of that case in no way concedes Defendant is not subject to personal jurisdiction in Texas, nor does Defendant cite any legal authority for such a proposition. Indeed, this argument is hollow given that Defendant did not file a Motion to Dismiss for Improper Venue (*see* FED. R. CIV. P. 12(b)(3)) or a Motion to Transfer Venue (*see* 28 U.S.C. § 1404).

### III.   AT A MINIMUM, PLAINTIFF IS ENTITLED TO JURISDICTIONAL DISCOVERY

"Where issues arise as to jurisdiction or venue, discovery is available to ascertain facts bearing on such issues." *Exhibit Icons, LLC v. XP Companies, LLC*, No. 07-80824, 2008 WL 616104, at *1 (S.D. Fla., March 3, 2008) (slip copy) (citing *Oppenheimer Fund v. Sanders,* 437 U.S. 340, 351 n. 13 (1978)).

Specifically, "[i]f the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation, ... then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue" *Id.* (citing *Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 730 n. 7 (11th Cir. 1982)).

"A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum." *El-Fadl v. Cent. Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996).[7]

In this case, Plaintiff has submitted evidence of Defendant's contacts with Texas, *e.g.* Mugnier's continuous and systematic banking relationship with financial institutions in Texas. However, to the extent the Court is not convinced these contacts are sufficient, Plaintiff should be permitted to conduct reasonable jurisdictional discovery prior to the Court ruling on Defendant's Motion to Dismiss. *See id.* Most probably, any discovery will reveal further contacts Mr. Mugnier has with Texas.

## IV.   CONCLUSION

WHEREFORE, premises considered, Plaintiff respectfully requests the Court deny Defendant's Motion to Dismiss, allow Plaintiff to proceed on the merits, and grant Plaintiff such other and further relief to which it may be justly entitled.

---

[7] Jurisdictional discovery is highly favored before resolving FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) motions to dismiss for want of personal jurisdiction. *See Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir.1997) (a motion to dismiss for lack of personal jurisdiction may require limited discovery so that a meaningful ruling can be made); *Majd-Pour v. Georgiana Community Hosp., Inc.,* 724 F.2d 901, 903 (11th Cir.1984) ("[a]lthough the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction"); *Blanco v. Carigulf Lines,* 632 F.2d 656, 657 (5th Cir.1980) (dismissal was error where defendants had not responded to plaintiff's interrogatories); *Skidmore v. Syntex Laboratories, Inc.,* 529 F.2d 1244, 1248-49 (5th Cir.1976) (held "that the district court acted too drastically in entering its order of dismissal without giving plaintiff a further opportunity for discovery" though defendants had answered 184 interrogatories); *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.1973) (en banc) (denial of jurisdictional discovery reversed though the plaintiff had agreed in writing that discovery would not take place until after the district court had ruled on defendants' motion to dismiss).

Respectfully submitted by:

*/s/ Kyle B. Mandeville*
Kyle B. Mandeville
Texas Bar No. 24065669
Passman & Jones
A Professional Corporation
1201 Elm Street, Suite 2500
Dallas, Texas 75270-2599
(214) 742-2121 Telephone
(214) 748-7949 Facsimile
mandevillek@passmanjones.com

**ATTORNEY FOR PLAINTIFF
MOBILITY CREDIT UNION**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of November 2016 a copy of the above has been served via ECF and by depositing same in the United States mail, postage prepaid, upon:

Mr. Gaston B. Mugnier
505 W 5th Ave.
Covington, LA 70433

*/s/ Kyle B. Mandeville*
Kyle B. Mandeville